Rachel C. Strickland
Andrew S. Mordkoff
Ciara A. Sisco
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

*Counsel for the Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| GBG USA Inc., et al.,[1] | : | Case No. 21-11369 (MEW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------x

**DECLARATION OF AGNES K. TANG IN SUPPORT OF ORDER APPROVING
SALE OF DEBTORS' SEAN JOHN ASSETS TO SUCCESSFUL BIDDER**

I, Agnes K. Tang, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, to the best of my knowledge, information, and belief:

1. I am over the age of 18 and am duly authorized to submit this declaration (the "**Declaration**") on behalf of the Debtors. I reserve the right to amend the Declaration, as necessary.

2. I am a Partner at Ducera Partners LLC ("**Ducera**"), and a registered representative of Ducera Securities LLC, which maintains its headquarters at 11 Times Square, 36th Floor, New York, New York 10036. Ducera has been retained by GBG USA Inc. and its affiliated debtors

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: GBG USA Inc. (2467), Jimlar Corporation (8380), GBG North America Holdings Co., Inc. (5576), Homestead International Group Ltd. (0549), IDS USA Inc. (7194), MESH LLC (8424), Frye Retail, LLC (1352), Krasnow Enterprises, Inc. (0122), Krasnow Enterprises Ltd. (0001), Pacific Alliance USA, Inc. (0435), GBG Spyder USA LLC (9108), and GBG Sean John LLC (1287). The Debtors' mailing address is GBG USA Inc., P.O. Box 4965 Greensboro, NC 27404.

and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") to assist with the sale of some or all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code.

3. On August 31, 2021, the Court entered the *Order (A) Authorizing and Approving Bid Procedures in Connection With Sale of Substantially All of the Debtors' Assets, (B) Authorizing and Approving Bid Protections, (C) Scheduling Related Auction and Hearing to Consider Approval of the Sale, (D) Approving Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases, (E) Approving Form and Manner of Notice Thereof, and (F) Granting Related Relief* [Docket No. 141] (the "**Bidding Procedures Order**")[2], establishing the Bidding Procedures and authorizing the Debtors to sell their assets.

4. On December 1, 2021, the Debtors filed the *Notice of Designation of Stalking Horse Bid and Stalking Horse Bid Protections (Sean John Assets)* [Docket No. 382] (the "**Stalking Horse Notice**"), establishing SLC Fashion LLC as the Stalking Horse Bidder for the sale of the Sean John assets.

5. On December 3, 2021, the Court entered the *Order Directing (A) Certain Orders in Chapter 11 Cases of GBG USA Inc., et al. Be Made Applicable to Additional Debtor and (B) Joint Administration of Related Chapter 11 Case* [Docket No. 386], applying the Bidding Procedures Order to the chapter 11 case of Debtor GBG Sean John LLC ("**Sean John**").

6. On December 8, 2021, the Debtors filed the *Notice of Sale by Auction and Sale Hearing* [Docket No. 395], establishing the bid deadline, the Auction date and time, the deadline to file objections to the sale of the Sean John assets, and the date of the Sale Hearing.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Bidding Procedures Order or the Stalking Horse Notice (as defined below), as applicable.

7.  I submit this Declaration to inform the Court of the Debtors' marketing and sale process, and in support of selecting the Stalking Horse Bidder as the winning bidder at the Auction with respect to the Sean John assets (the "**Successful Bidder**").

**Background and Qualifications**

8.  Ducera is an investment banking firm specializing in providing leading-edge capital structure and restructuring advice to companies, creditors, and investors in bankruptcy. Ducera provides a broad range of corporate and financial services to its clients, including: (a) general corporate advice; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; and (d) private placements. Ducera and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 cases. Ducera's business reorganization professionals have served as financial and strategic advisors in numerous cases, including, among others: (i) *In re Superior Energy Services, Inc.,* Case No. 20-35812 (Bankr. S.D. Tex); (ii) *In re Remington Outdoor Co., Inc.,* Case No. 20-81688 (Bankr. N.D. Ala); (iii) *In re Imerys Talc Am., Inc.,* Case No. 19-10289 (Bankr. D. Del.); (iv) *In re Paniolo Cable Co., LLC,* Case No. 18-01319 (Bankr. D. Haw.); (v) *In re Specialty Retail Shops Holding Corp.,* Case No. 19-80064 (Bankr. D. Neb.); (vi) *In re Sungevity,* Case No. 17-10561 (Bankr. D. Del.); (vii) *In re Toys "R" Us, Inc., Case* No. 17-034665 (Bankr E.D. Va.); (viii) *In re Panda Temple Power, LLC,* Case No. 17-10839 (Bankr. D. Del.); (ix) *In re Dacco Transmission Parts (NY), Inc.,* Case No. 16-13245 (Bankr. S.D.N.Y.); (x) *In re Hercules Offshore, Inc.,* Case No. 16-11385 (Bankr. D. Del.); (xi) *In re Illinois Power Generating Co.,* Case No. 16-36326 (Bankr. S.D. Tex.); and (xii) *In re Paragon Offshore PLC,* Case No. 16-10386 (Bankr. D. Del.).[3]

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these orders are available upon request to the Debtors' counsel.

9. The nature of my work over the past 19 years has been primarily focused on bankruptcy and restructuring situations, representing debtors, creditors, and investors in distressed companies. Prior to joining Ducera, I was a Managing Director at Perella Weinberg Partners from October 2008 through February 2015. In that capacity, I advised numerous clients in a variety of different types of distressed transactions that are implemented in court and out of court. Prior to my employment with Perella Weinberg Partners, from July 2002 through October 2008, I held a number of positions in the Financial Restructuring Group at Houlihan Lokey Capital, Inc. In addition, from July 1998 through December 2000, I was an investment professional at Marsh and McLennan Capital, a private investment fund of Marsh and McLennan, Inc. Finally, from July 1996 through July 1998, I worked as a strategy consultant at Mercer Management Consulting, now known as Oliver Wyman.

10. I received a Bachelor of Arts in Economics and in Mathematics from Northwestern University and a Masters of Business Administration from Harvard Business School. I hold the Series 7 and Series 63 securities licenses.

11. Unless otherwise stated herein, all facts and statements included in this Declaration are based upon my personal knowledge, my review of relevant documents, information provided to me or verified by the Debtors or the Debtors' other professional advisors, and/or my opinion based upon (a) my personal knowledge of the Debtors' operations and financial performance, (b) my oversight of the sale process for the Debtors' assets since May 2021, (c) information learned from my review of relevant financial and operational data regarding the Debtors, (d) information received from members of the Debtors' management team or their other advisors, and (e) my experience advising both distressed and non-distressed businesses.

12. I am authorized to submit this Declaration on behalf of the Debtors, and, if called as a witness, I could and would testify thereto.

## THE DEBTORS' MARKETING EFFORTS

13. With the aid of their advisors, prior to the Petition Date, the Debtors explored and evaluated strategic business alternatives to enhance liquidity, including debt refinancing, cost savings initiatives, proceeds-generating transactions, M&A activities, and other strategic alternatives. Given, among other things, their substantial leverage, near term liquidity crisis and the continuing pressure on the Debtors' business and related impact on retention of key personnel, the Debtors conducted a comprehensive liquidity analysis and considered several potential restructuring alternatives. The Debtors ultimately determined that a sale process was the best option to maximize value for all stakeholders. To that end, in or around May 2021, Ducera commenced a targeted marketing process for the sale of the Debtors' assets, including those related to their Sean John brand. As part of this process, Ducera contacted more than 45 potential parties-in-interest. More than 30 parties executed confidentiality agreements and, thereafter, were granted access to a data room for continued diligence.

14. On July 29, 2021, GBG USA Inc. and certain of its affiliates (the "**Initial Debtors**") commenced these chapter 11 cases to sell the Debtors' fashion brands pursuant to section 363 of the Bankruptcy Code. Since that time, the Debtors have engaged in a robust marketing process to sell substantially all of their assets. The results of this process have been fruitful, as the Debtors have already sold several of their brands — including Aquatalia, Ely & Walker and Tahari — as well as many other *de minimis* asset sales.

15. As a crown jewel asset of their portfolio, the Debtors also contemplated selling their Sean John brand — the Debtors' joint venture with celebrity and music mogul Sean Combs — as part of these chapter 11 cases. However, given that Sean John was not an Initial

Debtor, the Debtors had planned to structure the Sean John sale as a stock sale of the Debtors' 90% equity stake in the Sean John joint venture. In the months leading up to the Petition Date, the Debtors and their advisors considered whether Sean John should also file for chapter 11 protection. While an obligor under the Debtors' prepetition secured credit facilities, Sean John was not included in the initial filing given that, at that time, the Debtors did not have requisite consent from their joint venture partner to file the entity for bankruptcy.

16. While several potential bidders expressed interest in the Sean John brand, as the marketing process developed over the past several months it became apparent that selling the Debtors' equity in a non-debtor entity presented significant obstacles for certain bidders, posed execution risk, and stifled competition. To better facilitate a value-maximizing transaction, the Debtors began exploring the possibility of filing Sean John so that the sale could be implemented through these chapter 11 cases. After consulting with their advisors and board of directors, the Official Committee of Unsecured Creditors and prepetition secured lenders, the Debtors determined that filing Sean John and pivoting to a 363 asset sale would maximize value and was in the best interests of their estates.

17. Accordingly, following an extensive, months-long multi track negotiation process, the Debtors' efforts ultimately culminated with the execution of that certain asset purchase agreement (the "**Stalking Horse APA**"), dated as of December 1, 2021, by and among SLC Fashion LLC (as Purchaser), CeOpCo, LLC (as Guarantor), and Debtors Sean John LLC and Pacific Alliance USA Inc. (as Sellers).

18. Pursuant to the Stalking Horse APA, the Stalking Horse Bidder committed to a purchase price of $3.3 million for the Sean John assets plus certain assumed liabilities (the

"**Stalking Horse Bid**").  The Stalking Horse Bid established a floor for the Sean John assets subject to higher or otherwise better offers.

19.  On December 1, 2021, the Court entered an order [Docket No. 386] establishing December 16, 2021 at 5:00 p.m. (prevailing Eastern Time) as the bid deadline (the "**Bid Deadline**").

20.  Since that time, and with the Stalking Horse APA in place, Ducera continued marketing the Sean John assets for an additional two weeks.  Ducera's marketing efforts consisted of, among other things, contacting numerous strategic buyers to solicit interest in a potential sale transaction, including parties that had expressed interest in the Sean John assets during the prepetition marketing process, and engaging in numerous discussion with such parties.

21.  As a result of these efforts, four additional parties submitted bids prior to the Bid Deadline that the Debtors and their advisors, in consultation with the Consultation Parties, determined to be Qualified Bids.  The competing bids were submitted by Allura Imports, Crestview Investments, One Step Up and United Ventures.  In accordance with the Bid Procedures, the Debtors notified the Notice Parties and the Qualified Bidders that an auction would take place.

## THE SUCCESSFUL BID

22.  Following the Bid Deadline, after careful consideration of the competing bids, the Debtors determined in their business judgement, in consultation with the Consultation Parties, to designate the Qualified Bids of One Step Up and Allura Imports (with a cash purchase price of $3.6 million) as the starting bid for the Sean John assets.  The Auction began on December 20, 2021 at 10:00 a.m. (prevailing Eastern Time).  The Auction afforded parties the opportunity to hold breakout sessions throughout the process with all bidding occurring in a main virtual "room."  All bids were transcribed to ensure an accurate recording of the bidding at the Auction.  After

fourteen rounds of bidding, the Debtors determined, in consultation with the Consultation Parties, that the Stalking Horse Bidder's final cash bid of $7,551,000 represented the highest and otherwise best offer for the Sean John assets and therefore, constituted the Successful Bid. At the conclusion of the Auction, the Debtors also announced, in consultation with the Consultation Parties, that the final bid of United Ventures at the Auction, which provided an increased cash purchase price of $7,500,000, constituted the next highest or otherwise second best bid and therefore, constituted the Back-Up Bid. The Auction concluded at approximately 4:30 p.m. (prevailing Eastern Time). Following the Auction, the Debtors filed a notice of the Successful Bidder on December 21, 2021 [Docket No. 425].

23. Based on my experience, knowledge of the Debtors' marketing efforts, and the terms set forth in the Stalking Horse APA, I believe that the Successful Bidder's bid provided the best value to the Debtors' estates and has the ability to close promptly.

24. It is my understanding that the Successful Bidder will, and has the financial wherewithal to, cure any default existing prior to the Closing under all of the Purchased Contracts, within the meaning of the Bankruptcy Code. I also believe that the Successful Bidder has provided adequate assurance of future performance under the Purchased Contracts, within the meaning of the Bankruptcy Code, based on my assessment of the Successful Bid and the reasons set forth in the *Notice of (I) Closing Assumed Contracts, and (II) Adequate Assurance of Future Performance* [Docket No. 408].

25. I believe that the Debtors conducted the sale process in compliance with the Bidding Procedures Order. I further believe that all parties participated in the sale process in good faith. It is my understanding that SLC Fashion LLC was selected as the Successful Bidder without collusion or fraud of any kind, in good faith, represented by separate counsel, and from arm's-

length bargaining positions. I have no reason to believe that the Successful Bidder has not proceeded in good faith in any respect in connection with this proceeding. I am not aware of any side deals or other arrangements that would evidence a lack of good faith. Further, I have no knowledge of the Successful Bidder engaging in any improper action or inaction that would cause or permit the Stalking Horse APA or the sale transaction to be avoided or justify the imposition of any costs or damages.

26. I am not aware of any facts indicating that the Stalking Horse APA was either fraudulently entered into or entered into for the purpose of hindering, delaying or defrauding creditors.

27. Further, to my knowledge the Successful Bidder is not an "insider" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors, officers or controlling stakeholders exist between the Successful Bidder and the Debtors.

28. In addition, as stated above, the Sean John assets were subject to a rigorous marketing process. The Debtors have been marketing the Sean John Assets since May. This process included extensive negotiations with multiple potential bidders regarding price, deal structure (whether to be implemented as an equity or asset sale) and process (whether to be implemented inside or outside of chapter 11). The Debtors and their advisors believe that the six months of marketing to date — coupled with an additional two week in-court process and a robust auction that involved multiple competing bids — was more than sufficient time to market test the value of the Sean John assets. The Stalking Horse APA was negotiated in good faith at arm's-length and all parties were represented by competent counsel of similar bargaining positions. Further, under the Member Consent attached to Sean John's petition [Case No. 21-12016, Docket

No. 1], the Class B Members affiliated with Combs irrevocably waived all consent rights with respect to the determination of the winning bidder. Therefore, the Debtors acted at all times in the interests of their estates and consistent with their fiduciary duties.

29. Based on my professional experience and knowledge of these chapter 11 cases, I believe that the selection of SLC Fashion LLC as the Successful Bidder constitutes a sound and reasonable exercise of the Debtors' business judgment, consistent with their fiduciary duties, because (a) the terms of the Successful Bid embody the highest or otherwise best offer received by the Debtors during the Auction and sale process, (b) the Successful Bid presents the best opportunity to maximize the value of the Debtors' Sean John assets, and (c) there is no alternative path that provides greater recoveries for the Debtors' Sean John assets than the Successful Bid.

30. For the foregoing reasons, I believe the Debtors' selection of SLC Fashion LLC as the Successful Bidder is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and is necessary and appropriate to maximize the value of the Debtors' estates. Therefore, I believe that the Court should approve the sale of the Sean John assets to the Successful Bidder.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 21, 2021　　　　　　　　/s/ Agnes K. Tang
　　　　New York, New York　　　　　　　Agnes K. Tang
　　　　　　　　　　　　　　　　　　　　*Ducera Partners LLC*